UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

PAIGE B., )
)
      Plaintiff, )
)
v. ) Case No. 21-CV-134-CDL
)
KILOLO KIJAKAZI, )
Commissioner of the )
Social Security Administration, )
)
      Defendant.[1] )
)

**OPINION AND ORDER**

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of a decision of the Commissioner of the Social Security Administration (Commissioner) denying disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **affirms** the Commissioner's decision.

**I.**    **Standard of Review**

The Social Security Act (Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d)(1), Kilolo Kijakazi is substituted as the defendant in this action, effective upon her appointment as Acting Commissioner of Social Security in July 2021. No further action need be taken to continue this suit, by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See id*. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S.Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S.Ct. at 1152 (quoting 42 U.S.C. § 405(g)). The court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.    Procedural History

On June 26, 2018, the plaintiff filed a protective Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income. (R. 15-16). The plaintiff was 43 years old on her amended alleged

disability onset date of June 30, 2015. (R. 98-99).[2] She initially alleged disability due to a back injury, arthritis in her spine, a bolt in her left foot, carpal tunnel syndrome, glaucoma, and degenerative disc disease. (R. 99). The plaintiff also submitted medical records documenting certain mental health diagnoses, including depression/bipolar disorder, trauma and stress-related disorder, and personality disorder. (*See* R. 111). She has worked as a home health aide and a dietary aide in the past, and she last performed work in 2009. (*See* R. 132).

The Commissioner considered the plaintiff's physical and mental limitations in denying her claim initially and on reconsideration. (R. 94-188). An administrative law judge (ALJ) held telephonic hearings on June 17, 2020 and September 30, 2020, which included testimony by the plaintiff, two vocational experts (VEs), and an impartial medical expert, Robert H. Smiley, M.D. (R. 15).

On October 29, 2020, the ALJ issued a decision denying benefits. (R. 15-38). Plaintiff appealed the ALJ's decision to the Appeals Council, which denied plaintiff's request for review on January 25, 2021. (R. 1). As a result, the ALJ's October 29, 2020 decision became the final decision of the Commissioner. *Id*. Plaintiff then timely appealed to the district court.

### III. The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step

---

[2] The plaintiff initially alleged an onset date of December 31, 2009. (R. 15).

one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that her impairment or combination of impairments prevents her from performing her previous work. The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id*.

Here, the ALJ determined at step one that plaintiff had insured status through March 31, 2016 and had not engaged in substantial gainful activity since her alleged disability onset date. (R. 18). At step two, the ALJ found that plaintiff suffers from the severe impairments of degenerative disc disease of the lumbar spine, status post-surgery; post laminectomy syndrome; obesity; degenerative joint disease and status post injury and surgery to the left ankle; diverticulitis; depressive disorder; trauma and stressor disorder; personality disorder; and schizoaffective disorder. *Id.* The ALJ found that plaintiffs'

hypertension is non-severe and that her alleged glaucoma is medically non-determinable. (R. 18-19).

At step three, the ALJ found plaintiff's impairments do not meet or medically equal a Listing. In explaining this finding, the ALJ discussed the "paragraph B" criteria—four areas of mental functioning used to determine whether a claimant's mental impairments functionally equal a Listing. (R. 14); *see* 20 C.F.R. § 404 Subpt. P App'x 1.[3] The ALJ found the plaintiff has a moderate limitation in understanding, remembering, and applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing oneself. (R. 19-20). Because plaintiff does not have at least one extreme or two or more marked limitations, the ALJ determined that the "paragraph B" criteria are not satisfied. (R. 21). The ALJ also considered the "paragraph C" criteria (for "serious and persistent mental disorders," *see* Listing 12.00A(2)(c)) and determined that they are not present. *Id.*

At step four, the ALJ determined that the plaintiff has the residual functional capacity (RFC) to perform

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except as follows: The [plaintiff] should not engage in climbing of ladders, ropes, or scaffolds. The [plaintiff] is not able to crawl. Stooping, crouching, kneeling, balancing, and climbing of ramps or stairs can be done occasionally. She should have no exposure to

---

[3] When there is evidence of a mental impairment that allegedly prevents a claimant from working, the ALJ must follow the procedure for evaluating mental impairments set forth in the regulations and is required to document the application of the procedure, known as the psychiatric review technique (PRT), in the decision. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The "paragraph B" criteria represent the areas of mental functioning a person uses in a work setting. *See* 20 C.F.R., Part 404, Subpart P, Appendix 1, §12.00 (C).

> unprotected heights, open flames, dangerous machinery or equipment, or other hazardous conditions (note that not all moving machinery is dangerous—such as machinery where moving parts are shielded). The [plaintiff] should have no exposure to elevated levels of vibration (with elevated level defined to mean in excess of that ordinarily found in modern office buildings or light manufacturing facilities). Due to mental impairments, the [plaintiff] is capable of doing only unskilled work consisting of simple and routine tasks with routine supervision that require only that she be able to understand, remember and carry out simple instructions. The [plaintiff] can maintain concentration and persist for two-hour periods during the workday, with normally scheduled work breaks between periods. The [plaintiff] can relate to supervisors and coworkers for work related purposes with occasional contact, and can adapt to a work situation where interaction with others is incidental to work performed. She should have no contact with the general public (meaning interaction with the general public is not part of the job duties, and any contact would in most cases be incidental and superficial).

(R. 21).

The ALJ determined that plaintiff has no past relevant work. (R. 30). Thus, the ALJ proceeded to step five. Based on the VE's testimony as to a hypothetical claimant with the plaintiff's age, education, work experience, and RFC, the ALJ found that plaintiff can perform the requirements of representative occupations, including:

> ***Document Preparer***, Dictionary of Occupational Titles (DOT) # 249.587-018, sedentary, unskilled, specific vocational preparation (SVP) level 2, with 44,000 such jobs estimated in the national economy;
>
> ***Clerical Mailer***, DOT # 209.587-010, sedentary, unskilled, SVP level 2, with 20,000 such jobs estimated in the national economy; and
>
> ***Circuit Board Screener***, DOT # 426.684-110, sedentary, unskilled, SVP level 2, with approximately 24,000 such jobs estimated in the national economy.

(R. 31). The ALJ found that these occupations comprise work that exists in significant numbers and, accordingly, found plaintiff not disabled at step five. *Id*.

## IV. Discussion

The plaintiff contends that the ALJ erred at step three in finding that her mental impairments do not meet or equal Listing 12.03 or 12.04. She also challenges the ALJ's step-five conclusion that the plaintiff can perform alternative work. Both of these arguments focus on certain portions of consultative examination reports by (1) Derrise Garner, Psy.D., in 2014, and (2) Peter Ciali, Ph.D., in 2018.[4] The Commissioner argues that the ALJ's decision is free from legal error and is supported by substantial evidence.

### A. Step Three Findings

The plaintiff bears the burden to show that her impairment satisfies the criteria of a Listing. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). All of the specified medical criteria must be matched to meet a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of [the] criteria, no matter how severely, does not qualify."). The ALJ is required to discuss the evidence and the ALJ's reasons for

---

[4] The plaintiff's brief also "submit[s] that 88,000 jobs in the national economy" does not constitute a "significant number" to support the ALJ's step-five finding. (Doc. 22 at 5). However, the plaintiff fails to supply any authority supporting the proposition that the Court should overturn the ALJ's decision on this basis, and the Court is aware of none. To the contrary, the Tenth Circuit has emphasized that "the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation" and, as such, this determination "should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (quoting *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992)). Accordingly, this argument is rejected.

determining a claimant did not satisfy any Listing. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996); *see also* 42 U.S.C. § 405(b).

Plaintiff argues that the ALJ failed to adequately discuss the requirements of Listings 12.03, which address schizophrenia spectrum and other psychotic disorders, and 12.04, which addresses depression, bipolar, and related disorders. The ALJ addressed each of these Listings but found that the severity of the plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal all of their criteria. (R. 19).[5]

Listing 12.03 has two main requirements: (1) medical documentation of either delusions or hallucinations, disorganized thinking (speech), or grossly disorganized behavior or catatonia; and (2) an "extreme" limitation in one of the "paragraph B" domains, or "marked" limitations in two of the domains. 20 C.F.R. § 404 Subpt. P App'x 1, § 12.03. A marked limitation means that the claimant is seriously limited in functioning in the domain independently, appropriately, effectively, and on a sustained basis. *Id*. § 12.00(F). An extreme limitation means the inability to function in the domain independently, appropriately, or effectively, and on a sustained basis. *Id.* Similarly, Listing 12.04 requires one extreme or two marked limitations in the "paragraph B" domains. *Id*. § 12.04.

The ALJ's decision explained that, because the ALJ found the plaintiff has no more than moderate limitations in the "paragraph B" domains, her mental impairments do not

---

[5]   The ALJ's decision also noted certain other Listings related to mental disorders, but the plaintiff's brief only challenges the ALJ's findings as to Listings 12.03 and 12.04.

meet or medically equal Listings 12.03, 12.04, or other mental disorder-related Listings. (*See* R. 20). The ALJ's decision explained his findings in each domain, with reference to plaintiff's statements, standardized test results, and the observations and opinions of plaintiff's treating providers and consultative examiners. (R. 20-21).

In understanding, remembering, or applying information, the ALJ found that plaintiff has a moderate limitation. Dr. Garner's examination in 2014 documented "very low" short-term memory for auditory information, as well as low-average intellectual functioning. (R. 20). During Dr. Ciali's 2018 consultative examination, the plaintiff scored two out of five in delayed recall, and was observed to have slightly impaired memory for recent and remote events and only fair judgment. *Id*. However, the ALJ noted other evidence supported a "moderate" limitation, including 2015 examination notes from Bryan Sheehan, D.P.M. observing that the plaintiff had fully intact recent and remote memory. The ALJ noted plaintiff's complaints "at times" that her memory was worsening; however, he also noted that the plaintiff's "medical records tended to show [her] memory was normal or intact." *Id*.

In interacting with others, the ALJ found the plaintiff has a moderate limitation. *Id*. In 2018, she reported difficulty being around other people and feeling that others were plotting and lying about her. During Dr. Ciali's 2018 examination, the plaintiff scored two out of three on the language portion of the Montreal Cognitive Assessment. *Id*. Although her eye contact was "variable," she was polite and cooperative, and she denied homicidal ideations. *Id*. Reviewing the medical records, the ALJ noted that plaintiff was "generally" pleasant and was sometimes anxious but not agitated. *Id*.

The plaintiff's moderate limitation in concentrating, persisting, and maintaining pace reflected a below-average MoCA score on attention, as well as Dr. Ciali's report that the plaintiff was able to concentrate and maintain attention throughout the evaluation. *Id*. the plaintiff's medical records showed that her attention span and concentration were poor at times, but normal at other times. *Id*.

The ALJ found that the plaintiff has no limitation in adapting or managing oneself, noting that the plaintiff was reported to be well-groomed, with "good attention to hygiene"; and she exhibited fair to normal judgment. *Id*.

**B.     Dr. Garner**

Plaintiff argues that the ALJ overlooked certain evidence indicating that she has marked limitations in certain domains. During Dr. Garner's 2014 consultative examination, the plaintiff reported that "she often goes from depression to excessive agitation and anger, in which she seriously wants to hurt people. She indicated the last time this occurred was a couple of months ago, when she actually 'hit a girl in the face.'" (R. 711). Dr. Garner opined that, "[a]t the maximum, the [plaintiff] would appear to have the capacity to interact in only a very limited contact situation involving work supervisors and/or coworkers, and would need much supervision and direction." (R. 712). Dr. Garner further opined that the plaintiff "would not appear capable of persisting on even a simple task during a normal workday." *Id*. Dr. Garner also related the plaintiff's statements that she sometimes hears voices calling her name or telling her to harm herself, and that she sees shadows and shapes.

The plaintiff's brief contains no developed argument regarding this evidence, but appears to contend that Dr. Garner's findings supported marked and/or extreme limitations

10

in one or more of the first three "paragraph B" domains, and/or restrictions in the RFC determination that would preclude substantial gainful activity. The ALJ's decision must articulate how she considered the medical opinions or prior administrative medical findings from each medical source. 20 C.F.R. § 404.1520c(b)(1).[6] The most important factors for the ALJ to consider are supportability and consistency, and the ALJ's decision must explain how she considered those factors in determining persuasiveness of a medical source's medical opinions or prior administrative medical findings. *Id*. § 404.1520c(b)(2).[7]

Here, the ALJ's decision recounted Dr. Garner's report in two detailed paragraphs, noting that the plaintiff denied having any friends and indicated she may be too depressed to manage her own finances. (R. 26). The plaintiff reported that she had driven herself to the appointment, but she was not able to produce a driver's license or other official identification, even "after much rummaging in her purse." *Id*. The plaintiff exhibited depressed affect, speech, and thought content, and was slow responding to questions and task instructions. (*Id*.; *see* R. 709-710).

The ALJ noted Dr. Garner's opinion that the plaintiff was not capable of persisting even on simple tasks during a workday or of interacting in simple contact situations involving the public. (R. 29). However, he noted that Dr. Garner "opined the [plaintiff]

---

[6] For claims filed on or after March 27, 2017, such as the plaintiff's claim here, the Commission does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinions." 20 C.F.R. § 404.1520c(a).

[7] The ALJ must also consider the medical source's relationship with the claimant, specialization, and other factors, but the ALJ's decision is not required to specifically address those additional factors. *Id*. § 404.1520c(c).

11

appeared capable of understanding and remembering simple instructions" and that, at maximum, the plaintiff could interact in only a very limited capacity with work supervisors and/or coworkers, while also requiring "much supervision and direction." *Id*. With respect to persistence, the ALJ found Dr. Garner's opinion not to be persuasive, "not only because it predates the amended alleged onset date, but because this limitation is not supported by the State Agency's review or Dr. Ciali's examination and findings[,] which found the [plaintiff] could pay sufficient attention during the evaluation and could manage[] her own funds." *Id*. Nonetheless, the ALJ found Dr. Garner's opinion is consistent with Dr. Ciali's findings as to the plaintiff's limitation to simple work and to social limitations. *Id*.

The ALJ's ultimate RFC determination is largely consistent with Dr. Garner's opinion of the plaintiff's abilities, including in social interaction limitations. The ALJ rejected Dr. Garner's opinion that the plaintiff cannot persist on even simple tasks during a normal workday, but the ALJ's decision provided adequate reasons for doing so—i.e., Dr. Garner's examination took place more than a year before the amended onset date, and that portion of her opinion is not consistent with other, more contemporaneous evidence in the record. As such, the ALJ properly addressed the required factors of supportability and consistency in discussing Dr. Garner's opinion.

The ALJ's opinion did not discuss every aspect of Dr. Garner's opinion, but it was not required to do so. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting [the] decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative

evidence he rejects." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)). Here, the ALJ was not required to specifically address plaintiff's self-report to Dr. Garner about her extreme mood swings and periodic desire to hurt other people. As noted, Dr. Garner's examination predated the alleged onset date by more than one year. Further, the ALJ noted other, similar evidence, including two separate occasions when she reported having problems getting along with others. (R. 22).

Regarding the plaintiff's report of auditory and visual hallucinations, the ALJ's decision expressly noted that the plaintiff "did endorse a history of hallucinations and suicidal thinking." (R. 26). The ALJ concluded that the plaintiff's history of hearing voices supports having no contact with the general public and only occasional contact with coworkers and supervisors." (R. 30). As noted above, the RFC assessment is consistent with the social-interaction limitations in Dr. Garner's opinion. Thus, the ALJ's decision adequately addressed the symptoms noted in Dr. Garner's report.

**C.   Dr. Ciali**

The plaintiff's brief also points to certain selected portions of Dr. Ciali's 2018 examination report. However, as with Dr. Garner's opinion, the ALJ's decision discussed Dr. Ciali's report and explained how he considered it in making the "paragraph B" and RFC findings. For example, Dr. Ciali noted the plaintiff reported a history of hearing voices calling her name and telling her to harm herself. (R. 27). She told Dr. Ciali that she could not "be around people" and felt that others were plotting against her and lying. *Id*. During the examination, the plaintiff was alert and oriented to person, place, time, and situation;

13

she was polite and cooperative; and she "maintained a reasonable level of concentration and attention." *Id*. The ALJ found Dr. Ciali's opinion persuasive, including that the plaintiff's ability to carry out simple instructions was intact, and that she was moderately limited in her ability to perform work related to remembering information, understanding instructions, and maintaining sustained concentration. *Id*. While Dr. Ciali opined that the plaintiff has marked deficits in her ability to socially interact and adapt, the ALJ found those limitations to be consistent with the RFC determination. (R. 30).

As such, the ALJ's decision adequately addressed Dr. Ciali's report. The Court can readily follow the ALJ's reasoning, and his "paragraph B" and RFC findings extend logically from the evidence. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) (citing *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (the ALJ is required "to discuss the evidence and explain why [she] found that [a claimant] was not disabled at step three")).

### D. Summary

Substantial evidence supports the ALJ's "paragraph B" findings. As such, the plaintiff did not meet her burden to show any reversible error in the ALJ's finding regarding Listings 12.03 and 12.04. Furthermore, plaintiff has shown no error in the ALJ's findings at step five, including in his consideration of the reports of Dr. Garner and Dr. Ciali. Rather, the plaintiff is asking the Court to re-weigh the evidence, which it may not properly do. *See Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." (citation and quotation omitted)); *see also Richardson v. Perales*,

402 U.S. 389, 399 (1971) ("We . . . are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.").

## V. Conclusion

The Court finds that the ALJ's decision is supported by substantial evidence and free of reversible legal error. The decision of the Commissioner finding the plaintiff not disabled is therefore **affirmed**.

DATED this 9th day of March, 2023.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge